AUSA: Michael E-Zein     Telephone: (313) 226-9770
Special Agent:    Julia E. Macbeth     Telephone: (313) 919-1373

AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | Case: 2:19−mc−51356-1 |
| *(Briefly describe the property to be seized)* | ) | Assigned To : Hood, Denise Page |
| All funds on deposit in Huntington Bank Account Number | )  Case No. | Assign. Date : 9/17/2019 |
| 02381239983 as further described on Attachment A | ) | Description: Search/Seizure Warrant (SO) |
| | ) | |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Eastern_____ District of ____Michigan____ is subject to forfeiture to the United States of America under _____ U.S.C. §

__See Below____ *(describe the property)*:

18 USC § 981(a)(1)(A) and (C); and 18 USC §§ 982(a)(1) and (a)(2)(B) -- All funds on deposit in Huntington Bank Account Number 02381239983 as further described on Attachment A

The application is based on these facts:
See Attached Affidavit

☐ Continued on the attached sheet.

_____
*Applicant's signature*

FBI SA Julia E. Macbeth
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: ___September 17, 2019___

_____
*Judge's signature*

City and state: _Detroit, MI_

Anthony P. Patti      U. S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

## FOR SEIZURE WARRANTS

I, Julia E. Macbeth, being duly sworn, states as follows:

### YOUR AFFIANT'S BACKGROUND, TRAINING, AND EXPERIENCE

1. I am a Special Agent of the FBI and, as such, an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

2. I have been employed by the FBI since May 2016. Prior to joining the FBI, I was a Federal Air Marshal from December 2010 until April 2016. I earned a Bachelor's degree in criminal justice from Western Michigan University and a Master's degree in criminal justice from Tiffin University. I have received law enforcement training at the Federal Law Enforcement Training Center and the FBI Academy. During my employment with the FBI, I have investigated federal crimes involving mail fraud, wire fraud, money laundering, investment fraud, identity theft, and various other illegal activity.

3. During these investigations, I have been the affiant on search warrants for both businesses and residences.

4. At all times during the investigation described in this affidavit, I have been

1

acting in an official capacity as a Special Agent of the FBI.

5. The facts in this affidavit come from my personal observations, my training
   and experience, and information obtained from other agents, contractors, and
   witnesses. This affidavit is intended to show only that there is sufficient
   probable cause for the requested warrants and does not set forth all of my
   knowledge about this matter.

## PROPERTY SEIZED AND TO BE SEIZED

6. The instant affidavit is submitted in support of applications for seizure
   warrants for:

   **All funds in JPMorgan Chase Bank Account no. 902081335**
   **All funds in Huntington Bank Account no. 02381239983**

   Both of these accounts are in the name of Russell Gauger.

## LEGAL BASIS FOR FORFEITURE

7. I have reason to believe and do believe, that above described funds which
   are the subject of this affidavit, constitute proceeds of illegal activity and/or
   constitute property that is traceable to proceeds of illegal activity, namely
   violations 18 U.S.C. § 1029(a)(1) ("Access Device Fraud"), and 18 U.S.C.
   § 1956 ("Money Laundering"), and are, therefore, forfeitable civilly to the
   United States Government under 18 U.S.C. §§ 981(a)(1)(A) and (C), and
   forfeitable criminally under 18 U.S.C. §§ 982(a)(1) and (a)(2)(B).

8. Title 18 United States Code, Section 981(a)(1)(A) provides for the civil

forfeiture of any property, real or personal, involved in a transaction or an attempted transaction in violation of section 1956, or any property traceable to such property.

9. Title 18, United States Code, Section 981(a)(1)(C) provides for the civil forfeiture of the following: any property real or personal which constitutes or is derived from proceeds that are traceable to any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such an offense.  Access Device is a "specified unlawful activity."  18 U.S.C. §§ 1596(c)(7)(A), 1961(1).

10. Title 18, United States Code, Section 982(a)(1) provides for the criminal forfeiture of any property, real or personal, involved in a Money Laundering offense, or any property traceable to such property.

11. Title 18, United States Code, Section 982(a)(2)(B) provides for the criminal; forfeiture of any property constituting, or derived from, proceeds a person obtained directly or indirectly, as the result of, inter alia, Access Device Fraud.

12. Title 18, United States Code, Section 1029(a)(1) prohibits the knowing and intentional production, use, or trafficking of one or more counterfeit access devices.

13. Title 18 of the United States Code, Section 1956 prohibits conducting or

3

attempting to conduct monetary transactions in property known to be

derived from some form of specified unlawful activity with, inter alia: the

intent to promote the carrying on of specified unlawful activity; or, knowing

that the transaction is designed, in whole or in part, to conceal or disguise

the nature, the location, the source, the ownership, or the control of the

proceeds of specified unlawful activity.

14. Title 18, United States Code, Section 984(a)(1) states that:

> In any forfeiture action in rem in which the subject property is .
> . . funds deposited in an account in a financial institution . . .
> (A) it shall not be necessary for the Government to identify the
> specific property involved in the offense that is the basis for
> forfeiture; and
> (B) it shall not be a defense that the property involved in such
> an offense has been removed and replaced by identical
> property.

15. Based on my training and experience as an FBI Special Agent, I know that

money launderers will often engage in one or more of the following

activities in an effort to conceal or disguise the nature, location, source,

ownership or control of proceeds of unlawful activity, such as Access

Device Fraud: (a) open multiple bank accounts for a single entity; (b) move

the proceeds of unlawful activity to different accounts; and, (c) make

deposits and withdrawals by ATM to avoid frequent face-to-face contact

with bank personnel.

**BACKGROUND ON INVESTIGATION**

## Scheme Overview

16. From approximately March 2018 through April 14, 2019, Laszlo Gyorgy and an individual who is now believed to be Laszlo Csiki, worked together and with others to fraudulently obtain Personal Identifying Information ("PII"), including debit/credit card numbers and corresponding Personal Identification Numbers ("PINs") of victims without lawful authority and to use that information to make unauthorized cash withdrawals from the accounts of these victims and/or use the victims' credit for their personal gain.

17. To further this scheme, these individuals obtained fraudulent identification documents to secure lodging, establish fraudulent bank accounts, and establish fraudulent accounts with private or commercial interstate shipping carriers. The individuals manufactured counterfeit access device making equipment, commonly referred to as "skimming" devices. They then installed, without authorization, these devices along with small hidden cameras onto ATM machines to capture victims' bank account numbers and PINs. The individuals then recovered the devices and used the captured data to create fraudulent or altered access devices. The defendants used these fraudulent access devices, in conjunction with the victims' PINs to steal money from bank accounts through ATM machines.

18. Because of this activity, Laszlo Csiki and Laszlo Gyorgy were indicted on
April 23, 2019, in the Eastern District of Michigan for violations of 18
U.S.C. § 1029(a)(1), 18 U.S.C. § 1029(a)(4), and 18 U.S.C. § 1028A
(Aggravated Identity Theft).

## BACKGROUND ON LAZSLO CSIKI

19. When Laszlo Csiki was arrested, he advised he was Russell W. Gauger, and
he possessed identification to that effect. It is believed that Laszlo Csiki
assumed the identity of the Russell W. Gauger and that Russell W. Gauger is
a victim of identity theft. Using Russell Gauger's identity, Laszlo Csiki,
created, among other things, the bank accounts that are the subject of this
affidavit. Consequently, although references to activities will be attributed
to Laszlo Csiki, it should be noted that the accounts to be seized are in the
name of Russell W. Gauger.

## SHOWING OF PROBABLE CAUSE

### General Allegations

20. During 2018, the FBI's Detroit Metro Identity Theft Task Force ("DMIFT")
began investigating reports of skimming devices being installed on local
area credit union ATMs. The stolen card numbers were then used at other
ATMs for to make large withdrawals. Based on multiple reports from local
police departments and photo evidence provided by financial institutions, the

identity of one of the common suspects in multiple skimming incidents was established as being Laszlo Gyorgy.

21. Dort Federal Credit Union ("DFCU") reported that a credit card skimming device was installed on one of its ATMs in the Flint, Michigan, area on December 5, 2018. This compromise resulted in a fraud loss to their members' accounts of approximately $73,000. DFCU surveillance video captured an individual believed to be Gyorgy installing and removing the skimming devices. DFCU determined that a second skimmer was installed on its ATM located at a different branch in the same area in February 2019. This second compromise resulted in a fraud loss to their members' accounts of approximately $44,500. The above losses do not include losses to non-DFCU members who also used the above ATMs when the skimmers were installed.

22. Starting in February 2018, Dearborn Police received multiple reports from Members Focus Community Credit Union ("MFCCU") about an individual who was conducting multiple withdrawals from its ATM using fraudulent debit card numbers belonging to victims who would later report the fraud. Included in these reports, which continued up to April 2019, were complaints by DFCU members. A review of surveillance video and photos from MFCCU showed the same individual in these incidents as identified by

7

his physical description, his clothing, a satchel he carried, and attempts to cover his face by an item of clothing, such as a scarf, and/or his own hands. This individual also used glue sticks to cover ATM cameras.   Surveillance videos also captured a driver who was parked adjacent to the credit union, while the other individual was conducting the fraudulent withdrawals.

23. On April 13, 2019, investigators from the FBI DMIFT observed the same individual referred to above, later identified as Laszlo Gyorgy, approach the ATM vestibule at MFCCU in Dearborn.  Officers of the Dearborn Police Department were dispatched to that branch where they arrested Gyorgy, who was in possession of numerous gift cards encoded with stolen debit card numbers including the stolen DFCU numbers with the associated PIN numbers.  He also had a glue stick and approximately $9,000 in cash.

24. Dearborn Police also located and arrested the driver of a vehicle parked in a parking lot of a building adjacent to the MFCCU where Gyorgy was arrested.  That driver was Laszlo Csiki.  From that vehicle, which turned out to be a rental, police recovered a black bag containing approximately $35,500 in cash and approximately 300 gift cards encoded with stolen credit and debit card information.  They also recovered glue sticks.

25. Both Csiki and Gyorgy provided false identification to the police at the time of their arrest.  Gyorgy first claimed to be L.J.F., a Michigan resident who is

of a different race. Gyorgy even presented a false Michigan driver's license in the name of L.J.F. Later, Gyorgy provided his true name and law enforcement verified that he was a Romanian national with no legal status in the United States. Csiki persisted in refusing to provide his real name and continued to use the name of a New York resident, Russell Gauger, who was recently a victim of identity theft. Csiki presented a false Michigan enhanced driver's license in the name of Gauger, which listed an address on Deshon Street in Utica, Michigan. Later, Csiki admitted to a Homeland Security Agent that he was a foreign national present illegally in the United States.

26. Investigators later established that Csiki has used victim Gauger's name to obtain a Social Security card, a Michigan driver's license, establish a mailbox at UPS, and open a bank account at JPMorgan Chase ("Chase") Bank and at Huntington Bank.

27. A search of the above referenced rental vehicle, which Csiki was driving at the time of arrest, revealed a state registration for a different vehicle owned in the name of Csiki's fraudulent identification (Gauger) with an address on Deshon Street in Utica. Investigators also recovered fraudulent identification documents and bank cards matching Csiki's fraudulent alias.

28. Investigators verified that the residence on Deshon Street in Utica was

rented by Csiki using the name Russell Gauger. Photos of Csiki and Gyorgy were shown to the landlord of that residence and he confirmed that both individuals had been living at that residence for approximately a year. A search warrant was subsequently executed on that residence during which agents recovered the following items, among others:

a- Approximately $95,332 in U.S. currency;

b- Numerous counterfeit access device components used to manufacture counterfeit access devices;

c- Materials and components used to manufacture deep insert skimmers and related equipment such as flat stock, batteries, wiring harnesses, modified access devices, SD cards, and a Diebold style faceplate;

d- Tools used to manufacture counterfeit access device equipment such as a Dremel tool and a laptop computer;

e- Numerous articles of clothing that matched clothing observed on ATM and other surveillance videos;

f- Approximately 330 unauthorized (cloned) access devices with suspected PINs written on each of them;

g- Check book showing accounts opened in the name of victim Russell Gauger;

> h- Multiple additional fraudulent identification documents for multiple aliases for Csiki and Gyorgy, to include a California driver's license issued with Gyorgy's photo and the name J.M.

29. A room in the residence contained an abundance of equipment to manufacture counterfeit access devices. Law enforcement officers recognized the recovered devices and components as "skimming" equipment used to harvest PII such as credit card numbers, debit card numbers, and associated PIN numbers. The majority of the U.S. currency recovered was in $100, $50, and $20 bills, which is consistent with currency withdrawn from ATM machines.

30. Subsequent investigation led FBI DMIFT to execute a search warrant on a storage unit in Troy, Michigan, rented by Gyorgy in the name of J.M. That search revealed the presence of the following items among others:

> a- Approximately $22,480 in U.S. currency;
>
> b- A box of batteries commonly used to operate pinhole cameras in conjunction with skimming devices;
>
> c- Receipt for high-end merchandise purchased in the name of Csiki's alias, Russell Gauger.

31. A subsequent investigation into the cloned cards found in the apartment and storage unit confirmed that many of the account numbers belonged to DFCU

members.

32. According to records provided by MFCCU, victim D.B.'s DCFU debit card number was used to make a $500 withdrawal at the MFCCU branch in Dearborn on April 13, 2019. According to victim D.B, she did not make a withdrawal at the MFCCU in Dearborn and had never even been to the City of Dearborn before. Records provided by MFCCU verified the time, date, and location of the withdrawal as corresponding to when Gyorgy was making a withdrawal at the ATM just prior to his arrest. At the time of his arrest, Gyorgy was in possession of a gift card encoded with D.B's DFCU account information. DFCU records show D.B.'s card was compromised during a skimming incident in the Flint, Michigan, area.

33. According to records provided by MFCCU, victim M.C.'s DCFU debit card number was attempted to be used to make a $500 withdrawal at the MFCCU branch in Dearborn on April 13, 2019. According to victim M.C, he had never made a withdrawal at a MFCCU in Dearborn. In February 2019, M.C. had used his debit card to make a withdrawal at DFCU branch in Flint, Michigan. Records provided by MFCCU verified the time, date, and location of the withdrawal as corresponding to when Gyorgy was making a withdrawal at the ATM just prior to his arrest. At the time of arrest, Gyorgy was in possession of a gift card encoded with M.C's DFCU account

information.  DFCU records show M.C.'s card was compromised during a skimming incident in the Flint, Michigan, area.

34. Investigators located the real Russell Gauger, a New York resident, who confirmed that he became aware his identity had been stolen in the fall of 2017.  Gauger reported this identity theft to local law enforcement in New York.  Gauger confirmed to the FBI that he had never opened or held accounts with Chase Bank or Huntington Bank.  Gauger never resided in or had ever traveled to the State of Michigan.  Gauger had never given permission to anyone to use his information.

## ACCOUNTS INVOLVED IN THE SCHEME

35. As indicated above, Laszlo Csiki, along with Laszlo Gyorgy, worked together to fraudulently obtain PII, including debit/credit card numbers and corresponding PINs, of victims without lawful authority and to use that data to make unauthorized cash withdrawals from the accounts of these victims and/or use the victims' credit for their personal gain.

36. These unlawfully obtained funds were, if part, placed into bank accounts that had been established in stolen identities.  Two of the accounts are sought for seizure with this affidavit, as follows:

| Financial Institution | Account No. | Account Name | Signatory |
|---|---|---|---|
| JPMorgan Chase Bank | 902081335 | Russell Gauger | Russell Gauger |

| Huntington Bank | 02381239983 | Russell Gauger | Russell Gauger |
|---|---|---|---|

## FACTS SUPPORTING SEIZURE OF THE INSTANT ACCOUNTS

### JPMorgan Chase Account Number 902081335

37. Records from Chase Bank show that account no. 902081335 is a checking account titled to Russell Gauger. The account was opened on November 28, 2016, at the Chase Bank branch located at 20755 Nunneley Road, Clinton Township, Michigan. Russell Gauger was the only signatory listed on the account and the address associated with the account was 20235 Abrahm St, Clinton Township, Michigan. The balance in Chase Bank account no. 902081335 as of August 13, 2019, was $9,037.00.

38. Records from Chase Bank also show that from January 10, 2017, to April 12, 2019, 262 deposits of cash were made into Chase Bank account no. 902081335. All of these were ATM deposits. The total amount deposited into that account in this manner was $231,055.00.

39. Records from Chase Bank also show that from April 3, 2017, to March 25, 2019, 51 withdrawals of cash were made from Chase Bank account no. 902081335. All of these were ATM withdrawals. The total amount withdrawn from that account in this manner was $48,860.00.

### Huntington Bank Account Number 02381239983

40. Records from Huntington Bank show that account no. 02381239983 is a

14

checking account titled to Russell Gauger. It was opened on November 14, 2016, at the Huntington Bank branch located at16673 East 15 Mile Road, Clinton Township, Michigan. Russell Gauger was the only signatory listed on the account. A bank statement dated approximately one month after the opening of the account shows the account address to be 20235 Abrahm St, Clinton Township, Michigan. The balance in Huntington Bank account no. 02381239983 as of July 22, 2019, was $5,491.05.

41. Records from Huntington Bank also show that from March 13, 2017, to April 3, 2018, 61 deposits of cash were made into Huntington Bank account no. 02381239983. All of these were ATM deposits. The total amount deposited into that account in this manner was $41,880.00.

42. Records from Huntington Bank also show that from May 3, 2017, to July 16, 2018, eight withdrawals of cash were made from Huntington Bank account no. 02381239983. All of these were ATM withdrawals. The total amount withdrawn from that account in this manner was $2,580.00.

## CONCLUSION

43. As demonstrated above, there is probable cause to believe that Laszlo Csiki, along with Laszlo Gyorgy, fraudulently obtained cash from ATMs, in violation of 18 U.S.C. § 1029(a)(1). It is also demonstrated that Laszlo Csiki fraudulently opened a bank account at JPMorgan Chase Bank and at

Huntington Bank, and that he deposited cash into those accounts from January 2017 through March 2019. Investigators have found no indication that Laszlo Csiki had legitimate employment during this time period. Accordingly, there is probable cause to believe that the funds on deposit in the above identified accounts represent proceeds derived from or traceable to a violation of Access Device Fraud.

44. There is also probable cause to believe that the funds, derived from specified unlawful activity, were deposited into the accounts identified above within the United States knowing that such funds were derived from specified unlawful activity, with the intent of promoting the specified unlawful activity and/or knowing that the transaction was designed to conceal the location, ownership, and control of the proceeds. Accordingly, there is probable cause to believe that the funds on deposit represent property involved in, or property traceable to property involved in, money laundering.

45. Based on the above, the following funds:

**All funds in JPMorgan Chase Bank Account no. 902081335**
**All funds in Huntington Bank Account no. 02381239983**

described herein, are subject to seizure and civil forfeiture and/or subject to seizure and criminal forfeiture to the United States as the proceeds of criminal activity, as property traceable to the proceeds of criminal activity, and/or as property involved in or property traceable to property involved in

money laundering. As such, the above described property is subject to seizure and forfeiture civilly to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), and forfeitable criminally under 18 U.S.C. §§ 982(a)(1) and (a)(2)(B).

46. I am aware that 18 U.S.C. § 981(b)(3) authorizes the issuance of a seizure warrant in any district in which a forfeiture action against the property may be filed under 28 U.S.C. § 1355(b), and may be executed in any district in which the property is found.

47. I am aware that 28 U.S.C. § 1355(b) authorizes the filing of a forfeiture action in the District Court for the district in which any of the action or omission giving rise to the forfeiture occurred.

48. Accordingly, I respectfully request that warrants be issued to seize all funds from the specified accounts for purposes of civil and/or criminal forfeiture.

49. I request that both financial institutions be instructed to provide FBI agents with the current account balance upon seizure, as follows:

> **The financial institution upon which this seizure warrant has been served is instructed to provide federal agents authorized to seize the funds with the current balance in each account upon service of the seizure warrant and at the request of the FBI agents authorized to seize the funds.**

50. I further request that both financial institutions be instructed as follows:

> **This financial institution is further instructed to allow incoming funds but not allow funds to be withdrawn,**

17

**transferred, wired, routed or otherwise disbursed by or to any persons (other than the FBI agents authorized to seize the funds) for a period of fourteen (14) days from the issuance of the warrant. This financial institution is instructed to disburse funds to FBI agents and without further order of the court.**

## REQUEST FOR SEALING

51. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and seizure warrant. I assert that public disclosure of the existence of this search warrant affidavit and all the accompanying materials at this juncture would significantly increase the likelihood that the funds would be dissipated prior to seizure and therefore request this affidavit and all accompanying materials be sealed until further order of this Court.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Special Agent Julia E. Macbeth
Federal Bureau of Investigation

Sworn to before me and signed in my presence
And/or by reliable electronic means.

The Honorable Anthony P. Patti
United States Magistrate Judge

Dated:      September 17, 2019

18

## ATTACHMENT A

- All funds on deposit in Huntington Bank Account Number 02381239983

**The financial institution upon which this seizure warrant has been served is instructed to provide federal agents authorized to seize the funds with the current balance in each account upon service of the seizure warrant and at the request of the federal agents authorized to seize the funds.**

**This financial institution is further instructed to allow incoming funds but not allow funds to be withdrawn, transferred, wired, routed or otherwise disbursed by or to any persons (other than the FBI agents authorized to seize the funds) for a period of fourteen (14) days from the issuance of the warrant. This financial institution is instructed to disburse funds to FBI agents and without further order of the court.**

|  | AUSA:   Michael El-Zein | Telephone:   (313) 226-9770 |
|---|---|---|
| AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture  Special Agent: | Julia Macbeth | Telephone:   (313) 919-1373 |

# UNITED STATES DISTRICT COURT
## for the

Eastern District of Michigan

| In the Matter of the Seizure of | ) |
|---|---|
| *(Briefly describe the property to be seized)* | ) |
| All funds on deposit in Huntington Bank Account Number | ) |
| 02381239983 as further described on Attachment A | ) |
|  | ) |

Case: 2:19-mc-51356-1
Assigned To : Hood, Denise Page
Assign. Date : 9/17/2019
Case No.   Description: Search/Seizure Warrant (SO)

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ Eastern _____ District of _____ Michigan _____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

All funds on deposit in Huntington Bank Account Number 02381239983 as further described on Attachment A with permission to serve the warrant electronically followed by original service

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _October 1, 2019_
                                                                                                    *(not to exceed 14 days)*

[✓] in the daytime 6:00 a.m. to 10:00 p.m.   [ ] at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to the presiding United States Magistrate Judge on duty _____ .
                _(United States Magistrate Judge)_

[ ] Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
[ ] for _____ days (not to exceed 30)   [ ] until, the facts justifying, the later specific date of _____ .

Date and time issued:   September 17, 2019   4:10 pm          _____
                                                                                                      *Judge's signature*

City and state:   Detroit, MI _____          Anthony P. Patti          U. S. Magistrate Judge
                                                                                          *Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*